IN THE UNITED STATES DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALICIA BOYD o/b/o                                                                PLAINTIFF
A.B.

       v.                                            CIVIL NO.13-2081

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                   DEFENDANT

## Magistrate Judge's Report and Recommendation

Plaintiff brings this action on behalf of A.B., a minor child, seeking judicial review pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration (Commissioner), denying A.B.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**I. Background**

Plaintiff filed an application for SSI on A.B.'s behalf on June 21, 2011, alleging that A.B. was disabled due to deafness with bi-lateral cochlear implants. (Tr. 122, 134.) An administrative hearing was held on February 1, 2012. A.B. and Alicia Boyd were present and represented by counsel. (Tr. 28.). At the time, A.B. was 12 years old and in the sixth grade. (Tr. 33.)

The Administrative Law Judge ("ALJ"), in a written decision dated March 15, 2012, found that although severe, A.B.'s bilateral sensorineural hearing loss did not meet, medically equal, or functionally equal one of the impairments listed in 20 C. F. R. Part 404, Subpart P, Appendix 1. (Tr. 12). He concluded that A.B. had marked limitations in "acquiring and using information"; less than marked limitations in "interacting and relating with others" and "health and physical well-being"; and no limitations with regard to "attending and completing tasks," "moving about and manipulating objects," and the "ability to care for herself." (Tr. 15-22.)

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On January 22, 2013, the Appeals Council declined to review this decision. (Tr. 1.) Subsequently, plaintiff filed this action. (ECF No. 1.) Both parties have filed appeal briefs, and the matter is now ready for decision.

**II. Standard of Review**

The Court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings. *See* 20 C.F.R. § 416.926a(d). A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "more

than marked," and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3).

### III. Discussion

Plaintiff raises two issues on appeal: 1) the ALJ erred in finding that the Plaintiff did not have at least marked impairments in the domains of "attending and completing tasks,""interacting and relating to and "caring for yourself"; 2) the ALJ failed to fully and fairly develop the record due to the lack of RFC assessment by treating doctors or therapists. This Court agrees that there is no RFC by a treating source and that the record was not fully developed.

**A.     RFC Determination Not Based on Function Analysis by Treating Medical Source**

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

For all claimants,  the Eighth Circuit and the SSA regulations both indicate a strong preference for the use of treating physician opinions for the mental and physical RFC, unless the RFC they produce is unreliable for some reason, such as being inconsistent with the treating physician's own notes, or not based on reliable clinical and laboratory testing. See e.g. *Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004) (Generally, a treating physician's medical opinions about the nature and severity of an impairment are given controlling weight if well-supported and not inconsistent with the record); *Jenkins v. Apfel*, 196 F.3d

922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence); 20 C.F.R. § 404.1527(c)(2) & 416.927(b)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

For children, the preference for the use of treating medical source opinions is even more pronounced in the text of the regulations  Specifically, the regulations state:

> We will try to get information from sources who can tell us about the effects of your impairment(s) and how you function. We *will* ask for information from your *treating and other medical sources* who have seen you and can give us their medical findings and opinions *about your limitations and restrictions*. We *will* also ask for information from your parents and teachers, and may ask for information from others *who see you often and can describe your functioning* at home, in childcare, at school, and in your community.

20 C.F.R. § 416.926a(b)(3) (emphasis added).

In this case, while there are medical records from treating physicians as well as school records, there is no childhood disability RFC[2] assessment from a treating medical source. Nor does it appear that the ALJ requested one from a treating medical source and did not receive one. Instead, there are two RFC assessments from non-examining Agency physicians, dated August 31 and October 4, 2011. (Tr. 408, 418.) These RFC's agree on neither the diagnosis for A.B. nor the limitations for A.B. They also found no limitation in "acquiring and using information," despite clear objective medical and school evidence to the contrary. Not surprisingly, the ALJ gave these opinions "little weight." (Tr. 14.) Thus, there is no reliable RFC assessment in the record, let alone one from a treating medical source. Given that A.B. sees her

---

[2] The term RFC will be used to refer to both Adult Residual Functional Capacity (RFC) Forms and Childhood Disability Evaluation Forms in this opinion.

speech pathologist weekly and is at Arkansas Children's Hospital every ninety days (Tr. 50.), the failure to request an RFC assessment from one of these highly qualified treating medical sources is puzzling.

Because there is no RFC from a treating medical source who has seen A.B. and can provide information as to her limitations and restrictions, a remand is necessary. On remand, the ALJ is directed to obtain an RFC from A.B.'s speech pathologist, Dr Ramey.

**B.    Record Not Fully and Fairly Developed Overall**

Additionally, this Court cannot discern the extent to which the ALJ considered all of the evidence in the record concerning the domains of "interacting and relating with others" and the level of support or "wrap-around services" needed by A.B. to function in school.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). Once the ALJ is made aware of a crucial issue that might change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004.); *see e.g. Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir. 2010) (ALJ's failure to recontact Commissioner's consultative physician to authenticate his report was reversible error when that report supported Plaintiff's claim).

**1.)    Key Facts and Records Not Discussed for Domain of "Interacting and Relating With Others"**

In evaluating the domain of "interacting and relating with others," SSR 09-5p states:

Communication involves using and understanding both verbal and nonverbal skills in conversation. This is the social aspect of communication, also referred to as pragmatics. It involves verbal skills related to vocabulary choice and sentence formulation, and non-verbal skills, such as maintaining eye contact and using gestures, facial expressions, and physical postures. . . .When speaking in a conversation, a child must decide what to say and how to say it, using appropriate vocabulary and following the rules of grammar to communicate the intended message. . . .A child who has difficulty understanding either the verbal or the nonverbal message may not be able to participate appropriately in a

> conversation. . . . For example, classmates may become impatient or irritated when a child is unable to understand a joke (verbal) or to interpret facial expressions (nonverbal).

*Determining Childhood Disability - The Functional Equivalence Doman of "Interacting and Relating With Others,"* SSR 09-5p, *4 (2009). Both the rules and the domain SSR indicate that children experiencing difficulties in this domain may be fearful or anxious of meeting new people or trying new experiences. *See e.g.* 20 C.F.R. § 416.926a(i)(3)(iii) (Examples of limited functioning include being "overly anxious or fearful of meeting new people or trying new experiences"); SSR 09-5p, * 7 (an example of possible limitation includes a child that "[i]s overly anxious or fearful of meeting new people or trying new experiences").

In this case, A.B.'s speech and language evaluation from the Fort Smith Public School Department of Education indicated that, among other things, she is unable to "Identify/infer the purposes, content, organization, and delivery of communication and nonverbal cues" or "Participate in formal and informal discussions about a variety of topics." (Tr. 313.) All other language development quotients were below average in both receptive and expressive capabilities. The evaluation stated that these limitations can affect her ability to "use spoken vocabulary appropriate to age and situation." (Tr. 316.) The Speech Pathology report from Arkansas Children's Hospital found that she showed delayed skills in, among other things, Word Memory, Sentence Memory, and Auditory Comprehension. (Tr. 430.) A.B.'s speech pathologist, with whom A.B. works on a weekly basis, diagnosed her with: 307.90 - Communication Disorder, NOS; 315.32 - Mixed Receptive-Expressive Language Disorder; 315.39 - Phonological Disorder; and 389.18 - Sensorineural hearing loss. (Tr. 426.)In her summary of behavioral notations, the speech pathologist stated that A.B. had "receptive and expressive language deficits,"" weaknesses in auditory perceptual skills," and "vocabulary weaknesses." (Tr. 424.)

A.B.'s mother indicated on her function report that A.B. could not tell jokes or riddles accurately. A.B.'s mother testified that A.B. is delayed by about 18 months. She can "understand a lot of what you say

7

but you have to do it in very simplified terms." (Tr. 37.) She also testified that A.B. will make up content or meaning when she doesn't understand a word. (Tr. 40.)

At one point in the hearing, A.B. made an inappropriate response to the ALJ. The ALJ asked A.B. if she was looking forward to attending junior high. A.B. replied "Very likely." The ALJ asked if she meant "Very much?" A.B. replied "Yeah." (Tr. 53.)

A.B.'s mother testified that A.B. is "very structured," wants to know "exactly what's going to happen, exactly when it's going to happen, and exactly how it's going to happen." When she doesn't know, "the fear overtakes." (Tr. 47.) She gave an example of a substitute teacher getting slightly off in the classroom schedule. If that happens, "she doesn't handle the change." (Tr. 47.)

In the ALJ's evaluation of A.B's limitations in this domain, this Court cannot find any discussion of the Arkansas Children's hospital evaluation. The Fort Smith Public School evaluation is discussed, but the ALJ appears to have left out key portions of the evaluation that would support A.B.'s claim. The speech pathologist's report is discussed, but the ALJ failed to note the auditory perceptual weakness. There was no discussion of A.B.'s inappropriate response to one of his questions during the hearing. And finally, there was no discussion of any of the anxiety issues testified to by A.B.'s mother or of A.B.'s inability to understand jokes. (Tr. 18-19.)

On remand, the ALJ is directed to explicitly and completely evaluate the above-listed evidence, as well as any new evidence that may come in as a result of remand. This level of complete and explicit evaluation should additionally be performed for all domains.

> **2.)** **Level of Extra Support Required for A.B.'s Activities Not Fully Considered as Required By Regulations and SSR 09-1p and Activities Cited as Functional Indicators Without Consideration of Functional Value**

This Court is also concerned regarding the ALJ's lack of discussion of the level of extra support or "wrap around services" that are required by A.B. in order to function in school and her other activities. Further, this Court is concerned that some of the activities used by the ALJ to assess her functioning may

8
AO72A
(Rev. 8/82)

have been used as function indicators without sufficient development of the record as to their functional value.

The regulations require the ALJ to consider how "appropriately, effectively, and independently" the child performs their daily activities in comparison to children their age without impairments. 20 C..R. 416.926a(b). SSR-091p requires the ALJ to consider "the kinds of help or support the child needs to function." *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule - The "Whole Child Approach*," SSR 09-1p, *7 (2009). The following example is one of several given in SSR 09-1p:

> A 14-year-old child who has a serious emotional disturbance may be given "wrap-around services" that include the services of an adult who supervises the child at school. With these services, the child attends school, participates in activities with other children, and does not take any actions that endanger himself or others. However, the degree of "extra help" the child needs to function demonstrates a limitation in at least the domains of "Interacting and relating with others" and "Caring for yourself."

*Id.*

In this case, the ALJ placed considerable emphasis on the fact that A.B. "attends school, participates in P.E. at school, is involved in competition cheerleading, is active in girl scouts, and would like to try out for the band and volleyball team." (Tr. 14, 19, 20.)

Regarding A.B.'s attendance at school, the ALJ's discussion of the support required by A.B. is cursory at best. This discussion is limited to an acknowledgment that A.B. spends "519 minutes per week in special education classes and 1590 minutes per week in general education classes" and that "she requires special educational services at school."(Tr. 16.) Given the wide range of special education services that may be provided at a school, this brief reference does not clearly reflect the level of support that is indicated in the record. For example, in the general education classroom, both she and the teacher must wear a special headset so that the teacher speaks directly into A.B.'s hearing aid. (Tr. 48.) A.B.'s mother

9

testified that this is helpful, but that A.B. "doesn't always get it all."(Tr. 48.) "She struggles in all her subjects." (Tr. 40.)

Regarding the competition cheerleading, it is a private cheerleading squad at a local gym. (Tr. 41.) It is not a squad at her school. Although this Court does not wish to minimize A.B.'s achievements in any way, the record does not reflect what level of support A.B. needs to participate in this squad. Additionally, the record does not indicate if this squad requires tryouts, how large the squad is, to what extent each squad member is actively competing at any given time, or how that time is determined by the coach. These details are necessaryif this activity is to be used as a strong indicator of A.B.'s limitations or lack thereof. A.B.'s mother started to make a statement that sounded doubtful of A.B.'s ability to cheer in junior high, but was cut off by a question from the ALJ. (Tr. 42.) If participation in this private squad is more indicative of A.B.'s parents' ability to pay a membership fee than it is of A.B.'s cheerleading skills, then it should not be used as an indicator of A.B.'s limitations.

Regarding A.B.'s future plans of volleyball and band, these plans are future goals, not current achievements. While this Court does not want to discourage A.B.'s enthusiasm for future goals in any way, future goals should not be used to gauge current limitations.

On remand, the ALJ is directed to fully and fairly develop the record as to the level of support A.B. requires for school and her activities. The ALJ is further directed to fully and fairly develop the record as to the details of any school or other activity that will be used as an indicator of A.B.'s limitations or lack thereof.

**III. Conclusion**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in**

10

**waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of April 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)